UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| ROBERT YOUNG and | ) | |
|---|---|---|
| MICHAEL YOUNG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 3:20-cv-00363 |
| v. | ) | |
| | ) | |
| BERNHARD MCC, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Michael Young is Robert Young's father. Michael and Robert worked together at Bernhard MCC ("Bernhard"), until they were both fired on the same day. In this action, they are suing Bernhard under Title VII of the Civil Rights Act of 1964. Robert alleges he suffered employment discrimination in the form of sexual harassment at Bernhard. Michael claims Bernhard fired him in retaliation for reporting the harassment that his son faced.

Bernhard has moved for summary judgment as to Michael's retaliation claim. (Doc. No. 79). It argues his claim fails for lack of evidence. But the record does not show a lack of evidence. It shows *conflicting* evidence. Assessing conflicting evidence is the province of the jury, not the Court. Accordingly, the Court will deny Bernhard's request for summary judgment.

I.     BACKGROUND

Bernhard is a construction company. (Doc. No. 85-1 at 1). In 2018, it worked as a subcontractor on a construction site in Clarksville, Tennessee. (Id. at 3). Justin Wisor was the Senior Project Manager at the site and had overall supervisory responsibility for on-site operations. (Id.). Two General Superintendents, Eddie Moore and Corey Miller, reported to Mr. Wisor. (Id. at 3–4).

On July 5, 2018, Bernhard hired Michael to work at the Clarksville site as a Quality Control Manager. (Id. at 4). Michael's job, in a nutshell, was to assess the quality of the welding work done at the site and to ensure it conformed to various standards. (Id. at 4–5). Michael's qualifications included over 30 years of experience related to pipe welding. (Doc. No. 85-3 at 33).

Shortly after he was hired, Michael inquired into whether Bernhard could also employ Robert, who had just graduated from college. (Doc. No. 85-1 at 5). On July 18, 2018, Bernhard hired Robert as a Sheet Metal Helper. (Id.). Robert worked under the direction of several foreman on the site. (Id. at 5–6). One of them was Tony Pufahl. (Id.).

Mr. Pufahl, allegedly, repeatedly sexually harassed and assaulted Robert, beginning on August 6, 2018. (Doc. No. 92 at 3). On that day, Mr. Pufahl called Robert a "faggot," a "cocksucker," and other homosexual slurs. (Doc. No. 85-9 at 53). Robert reported the harassment that same day to his other supervisor, Alton Baker. (Id. at 55). But Mr. Baker told Robert to "let it pass," as Mr. Pufahl was probably just "having a bad day." (Id. at 56).

On August 7, 2018, Robert again worked with Mr. Pufahl and again suffered sexual harassment. (Id. at 141). Mr. Pufahl allegedly struck Robert in the genitals with a screwdriver, then implied Robert either had female genitalia or was a homosexual because the "love tap" did not hurt him enough. (Id. at 58, 60, 157–58).

Robert told Michael about the abuse he was suffering at work. (Doc. No. 85-3 at 64). On August 8, 2018, Michael reported the harassment to Mr. Moore. (Doc. No. 85-3 at 69). Mr. Moore brushed it off, stating, "Well, they're in sheet metal. I don't have any control over them." (Id.; Doc. No. 85-1 at 8).

Mr. Pufahl harassed Robert again on August 10, 2018 and August 15, 2018. (Doc. No. 85-9 at 141). On the former date, Mr. Pufahl called Robert a "cocksucker." (Id. at 69). On the latter

date, Mr. Pufahl called Robert "a pussy," asked him how his "pussy lips" felt, and said Robert "would feel a lot better if [Mr. Pufahl] stuck a finger in between [Robert's] pussy lips." (Id. at 71).

Robert told Michael about the incidents. (Doc. No. 85-3 at 67, 76). Michael decided he would report the harassment to an "HR man" with whom he had dealt when he was originally hired.[1] (Id. at 71). He called the HR man and explained the situation. (Id. at 70–71). The man said "I'm sorry this happened. I'll take care of this." (Id.).

Later, on the same day, Mr. Wisor scheduled a meeting with Michael. (Id. at 81–82). At the start of the meeting, Michael "took the hint" and asked whether he was "being fired for making that report" about "[his] son." (Id.). Mr. Wisor responded, "Yeah. That's pretty much it." (Id. at 81). Mr. Wisor then terminated Michael. (Id. at 74; Doc. No. 85-1 at 10). He also terminated Robert. (Doc. No. 79 at 35).

Michael sued Bernhard for retaliation on April 28, 2020. (Doc. No. 1). On September 1, 2020, the Court consolidated Michael's lawsuit with a lawsuit Robert had filed separately. (Doc. No. 49). Bernhard moved for summary judgment on Michael's retaliation claim on February 25, 2022. (Doc. No. 79). Bernhard's motion has been fully briefed. (Doc. Nos. 81, 85, 91).

---

[1] Bernhard has moved to strike an affidavit that Michael filed after his deposition that is related to the HR man. (Doc. No. 93). The affidavit avers that, in his deposition, Michael mixed up the phone number he called for the HR man and the time at which he made the call. (Doc. No. 85-2 at 1–2). "If [an] affidavit directly contradicts prior sworn testimony, it should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." France v. Lucas, 836 F.3d 612, 622 (6th Cir. 2016) (citation and quotation omitted). Here, Michael says he relied on phone records to jog his memory before his deposition. (Doc. No. 85-2 at 4). He assumed the number he identified in his deposition as belonging to the HR man was correct based on an inference he made concerning its area code. (Id.). Due to that inference, and the phone records, he assumed he had called the HR man around 3:00 p.m. on the date in question. (Id.). He later realized he made a mistake. (Id.). In reality, he had spoken with the HR man around 1:00 p.m. (Id. at 6). The phone records contain a call at that time. (Id. at 2). This explanation, together with the phone records, is a persuasive justification for how the "mix up" (id. at 1) in Michael's deposition occurred. The Court will deny Bernhard's Motion to Strike. (Doc. No. 93).

3

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where there is "evidence on which the jury could reasonably find for the plaintiff." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

At the summary judgment stage, the moving party "has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Id. If the moving party meets its burden, the nonmoving party must "show specific facts that reveal a genuine issue for trial" to survive summary judgment. Laster v. City of Kalamazoo, 746 F.3d 714, 726 (6th Cir. 2014).

When evaluating a summary judgment motion, the Court must view the record "in the light most favorable to the nonmoving party," accept that party's evidence "as true," and "draw all reasonable inferences in [that party's] favor." Id. The Court "may not make credibility determinations nor weigh the evidence" in its analysis. Id.

## III. ANALYSIS

Bernhard is not entitled to summary judgment. Title VII makes it unlawful for employers to terminate employees in retaliation for engaging in protected activity, such as reporting sexual harassment. Here, viewed in the light most favorable to Michael, the record shows Bernhard terminated him for reporting the sexual harassment of his son.

    A.    <u>Title VII Bars Employers from Terminating Employees in Retaliation for Engaging in Protected Activity.</u>

Title VII "prohibits retaliatory conduct by an employer when an employee engages in protected activity." Brown v. VHS of Michigan, Inc., 545 F. App'x 368, 373 (6th Cir. 2013); see

4

also 42 U.S.C. § 2000e-3. Employees engage in "protected activity" when they oppose practices "made unlawful under Title VII." Brown, 545 F. App'x at 373. Title VII makes it unlawful for employers to "discriminat[e] in employment because of race, color, religion, sex," and other characteristics. 42 U.S.C. § 2000e. So, for example, "complaining about discriminatory treatment" is a protected activity, and an employer may not retaliate against an employee for making such complaints. See Eades v. Brookdale Senior Living, Inc., 401 F. App'x 8, 10 (6th Cir. 2010).

The frameworks applicable to Title VII cases vary depending on if plaintiffs rely on "direct or circumstantial evidence." Ondricko v. MGM Grand Detroit, LLC, 689 F.3d 642, 649 (6th Cir. 2012). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful retaliation was a motivating factor in the employer's action." Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003). Circumstantial evidence is proof that does not show retaliation "on its face" but permits a "reasonable inference" that it occurred. See Ondricko, 689 F.3d at 649.

"Where a plaintiff has shown direct evidence of retaliation, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." Grizzard v. Nashville Hosp. Cap., LLC, No. 3:18-CV-00034, 2021 WL 3269955, at *20 (M.D. Tenn. July 30, 2021) (citation and quotation omitted). "In the summary judgment—as opposed to trial—context, the defendant-movant must show that *no reasonable jury* could fail to find by a preponderance that the defendant would have made the same decision absent the impermissible (here, retaliatory) motive." Id.

On the other hand, where "a plaintiff relies on circumstantial evidence," courts apply the burden-shifting framework set in McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 775–76 (6th Cir. 2016). Under that

5

framework, the plaintiff must first present a prima facie case of retaliation by showing "(1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." Dulaney v. Flex Films (USA), Inc., No. 20-6098, 2021 WL 3719358, at *6 (6th Cir. Aug. 23, 2021) (quoting Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 720 (6th Cir. 2008)). "If the employee makes out a prima facie case of retaliation, the burden shifts to the employer to produce evidence of a legitimate, nonretaliatory reason for its actions." Id. "If the employer satisfies this burden, the employee must then demonstrate that the employer's proffered nonretaliatory reason for its actions was in fact only pretext for retaliatory conduct." Id.

    B.    <u>Viewed in the Light Most Favorable to Michael, the Record Shows Bernhard Terminated Him in Retaliation for Engaging in Protected Activity.</u>

Under the frameworks for both direct and circumstantial evidence, Michael's retaliation claim survives summary judgment because the record indicates Bernhard terminated him for complaining about his son's sexual harassment.

    *1.*    *Michael Has Presented Direct Evidence that Bernhard Terminated Him for Engaging in Protected Activity.*

Michael has raised direct evidence of retaliation. He testified that he asked Mr. Wisor whether he was being fired for reporting his son's sexual harassment. (Doc. No. 85-3 at 81–83). According to Michael, Mr. Wisor responded affirmatively. (Id. at 81). This testimony, *if believed*, Abbott, 348 F.3d at 542, requires the conclusion that retaliation motivated Michael's termination. Indeed, being fired for reporting sexual harassment is a classic textbook example of unlawful retaliation. Grizzard, 2021 WL 3269955, at *19 ("The Court finds that . . . evidence of Mathis' statement that Plaintiff was terminated because she was a 'liability' due to her sexual harassment

6

complaint is direct evidence of retaliation against Plaintiff."); Yazdian v. ConMed Endoscopic Techs., Inc., 793 F.3d 634, 648 (6th Cir. 2015) (finding direct evidence of retaliation where a supervisor "specifically referenced [the plaintiff's] protected statements as examples of insubordination" when terminating the plaintiff).

Bernhard's argument that Michael's testimony does not count as direct evidence is unavailing. Bernhard points out, correctly, that evidence is not "direct" if it "admits more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact." (Doc. No. 81 at 19 (quoting Grizzard, 2021 WL 3269955 at *17)). Bernhard then argues Michael's conversation with Mr. Wisor is subject to more than one plausible interpretation. (Id.). Specifically, Bernhard avers one could interpret that conversation to mean Mr. Wisor fired Michael for making a report about improper welds, as opposed to firing him for making a report about sexual harassment. (Id.).

For the Court to agree with Bernhard, it would have to ignore the standard of review applicable at the summary judgment stage. In Michael's deposition, he testified that when he asked Mr. Wisor whether he was "being fired for making that report," he specified that he was referring to the report about "[his] son." (Doc. No. 85-3 at 81–83 ("I feel confident I said 'my son.' . . . There wasn't no question -- there wasn't no question as to what -- what the reason was between us because we went into detail talking about it for a few seconds there. I said -- so I said, 'So I'm being fired for filing a report for my son being sexually harassed against?'")). As noted, Mr. Wisor allegedly responded, "Yeah. That's pretty much it." (Id. at 81). Accepting Michael's testimony about his conversation with Mr. Wisor "as true," and viewing it in the "light most favorable" to Michael, Laster, 746 F.3d at 726, the Court cannot interpret that conversation to

7

mean Mr. Wisor fired Michael for making a report about improper welds.  Michael's testimony is subject to only one plausible interpretation and constitutes direct evidence of retaliation.

Because Michael has presented direct evidence of retaliation, the Court can only grant summary judgment if Bernhard has shown that no reasonable jury "could fail to find by a preponderance that [Bernhard] would have [fired Michael] absent [retaliatory] motive." Grizzard, 2021 WL 3269955, at *20.  It has not.  Bernhard claims it would have fired Michael no matter what based on Mr. Wisor's testimony that "he decided to terminate [Michael's] employment because of the constant disruption he caused on the job site and the confrontation[s] that he had with multiple employees." (Doc. No. 91 at 4 (citation and quotation omitted)).  However, in his deposition, Mr. Wisor had difficulty recalling the details of these alleged confrontations.  (Doc. No. 79-3 at 57 ("Q: All right.  That's one [confrontation], Rodney Clark.  And it happened at some unknown time and place about an unknown subject, correct?  A: That's correct.  That's correct.")).  Accordingly, a reasonable jury could discredit Mr. Wisor's testimony that the alleged confrontations motivated him to terminate Michael.  It could choose to believe Michael's version of events instead.  Michael's claim passes summary judgment based on the direct evidence of retaliation that he has offered.

> 2. *Michael Has Presented Circumstantial Evidence that Bernhard Terminated Him for Engaging in Protected Activity.*

Even if Michael did not have direct evidence of retaliation, he would survive summary judgment based on the circumstantial evidence he has presented.  Bernhard's arguments to the contrary each fail.

First, the Court disagrees with Bernhard's argument that Michael has not presented a prima facie case of retaliation because he "cannot show that he engaged in Title VII protected activity." (Doc. No. 81 at 2).  Michael testified that he reported the sexual harassment of his son to Mr.

8

Moore around a week before he was fired. (Doc. No. 85-1 at 8; Doc. No. 85-3 at 69). Bernhard does not appear to dispute this testimony.[2] The Court need not go any further; Michael's uncontested testimony about his conversation with Mr. Moore is sufficient, at this stage, to show Michael engaged in protected activity.

Second, the Court rejects Bernhard's argument that Michael's prima facie case fails because he "cannot show that the individual who made the decision to terminate his employment knew about his alleged protected activity." (Doc. No. 81 at 2). Mr. Wisor made the decision to terminate Michael. (Doc. No. 79-3 at 35). According to Michael, during the termination meeting, Mr. Wisor said he was firing Michael because he reported his son's sexual harassment. (Doc. No. 85-3 at 81–82). True, Bernhard has introduced conflicting testimony from Mr. Wisor. (Doc. No. 91 at 3 (citing Mr. Wisor's deposition and stating he "has denied that he had any knowledge of any complaints of sexual harassment by Michael or Robert Young")). But that is immaterial. The Court "may not make credibility determinations nor weigh the evidence" at this stage. Laster, 746 F.3d at 726. Accepting Michael's evidence as true and viewing the record in his favor, id., indicates Mr. Wisor was aware of Michael's protected activity.

Finally, the Court is not persuaded by Bernhard's argument that Michael cannot show its proffered reason for firing him was pretextual. (Doc. No. 81 at 2). To pass summary judgment, a plaintiff need only present evidence sufficient to "rebut, but not to disprove, the defendant's proffered rationale." Blair v. Henry Filters, Inc., 505 F.3d 517, 532 (6th Cir. 2007). Michael has rebutted Bernhard's proffered rationale—which is that Michael caused disruptions on the job site—through his testimony about Mr. Wisor's statements during his termination meeting. (Doc.

---

[2] Indeed, in its reply, Bernhard appears to abandon its claim that Michael did not engage in protected activity altogether, focusing instead on its argument that Mr. Wisor did not know about the protected activity. (Doc. No. 91).

No. 85-1 at 10; Doc. No. 85-3 at 74). Michael has also presented evidence that his termination occurred around a week after he first reported his son's sexual harassment. (Doc. No. 85-1 at 8; Doc. No. 85-3 at 69). This is significant because "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 285 (6th Cir. 2012) (quoting Bell v. Prefix, Inc., 321 Fed. App'x 423, 431 (6th Cir.2009)).

In sum: Bernhard has not convinced the Court that, under the circumstantial evidence framework, it is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Bernhard's Motion for Summary Judgment (Doc. No. 79) will be denied.[3]

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Because the Court is denying Bernhard's Motion for Summary Judgment (Doc. No. 79), it will also deny, as moot, Michael's request that the Court defer consideration of that motion and permit additional discovery related to it (Doc. No. 84).